UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

G. MATTS HOSPITALITY, LLC t/a
SANDS MOTEL,

          Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY
and JOHN DOES 1-100 (fictitious names),

          Defendants.

Case No. 3:17-cv-6826-BRM-DEA

OPINION

---

**MARTINOTTI, DISTRICT JUDGE**

     Before this Court is a Motion for Summary Judgment filed by Defendant Scottsdale Insurance Company ("Scottsdale" or "Defendant") seeking judgment against Plaintiff G. Matts Hospitality, LLC t/a Sands Motel ("G. Matts" or "Plaintiff") pursuant to Rule 56. (ECF No. 24.) G. Matts filed an Opposition to Scottsdale's Motion for Summary Judgment (ECF No. 27) and Scottsdale filed a Reply Brief to G. Matts' Opposition to its Motion for Summary Judgment (ECF No. 29). Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Scottsdale's Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

     On July 3, 2012, Scottsdale issued a commercial insurance policy (the "Policy") to G. Matts, bearing insurance policy number CPS1605501, for the June 20, 2012 through June 20, 2013 policy period. (ECF No. 24-5, Ex. O.) The Policy includes an endorsement entitled "Commercial

Property Conditions," which contains a suit limitation provision, stating:

> D. LEGAL ACTION AGAINST US
>
> No one may bring a legal action against us under this Coverage Part unless:
>
> 1. There has been full compliance with all of the terms of this Coverage Part; and
>
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(ECF No. 24-5, Ex. O at 106.)

On November 15, 2012, Scottsdale received a notice of claim via an Acord Property Loss Notice (the "Acord Form") from G. Matts claiming a loss on October 29, 2012. (ECF No. 24-4, Ex. I.) G. Matts claimed damage on its property caused by, among other things, flooding and winds as a result of Superstorm Sandy. (*Id.*) Thereafter, Scottsdale investigated and adjusted G. Matts' claim for property damage. On July 11, 2013, Marie Hampton, a claims analyst for Scottsdale, sent G. Matts a coverage letter indicating that Scottsdale would issue a payment of $6,975.97, accounting for a deduction of the $8,000 deductible. (*Id.*, Ex. J at 7.) The coverage determination letter stated, in pertinent part:

> The water damage in the stairwell is due to a wind created opening therefore it is covered. All the other water intrusion is due to long term seepage and or plumbing leaks. In order for there to be coverage for interior rain, the policy requires the rain [to] enter through an opening created by a covered cause of loss. Since there was no opening created due to a covered cause of loss through which the rain entered, there is no coverage for the other interior water damage. The policy also excludes any water damage due to continued or repeated seepage.
>
> There is coverage for the wind damage to the siding, gutters and roof.
>
> A check for the covered damage in the amount of $6,975.97, after consideration of the $8,000 wind deductible, will be sent under

2

> separate cover.
>
> [Scottsdale] reserves the right to review any additional claims or amendments to this claim and to make a separate determination as to whether a new claim or amendment to this claim is covered by the policy. Any decision we make regarding coverage is based on the facts as presented to us prior to our coverage determination and should not be construed as applicable to a new claim or an amendment to this claim. Our right to have notice of either situation is reserved, as are the notice conditions of the policy.
>
> . . .
>
> If you believe there is additional information that should be considered or some other reason the policy should provide coverage, please provide that information in writing within 30 days of receipt of this letter.

(*Id.* at 7-8.) The July 11, 2013 coverage determination letter was also sent via certified mail, with return receipt requested, to G. Matts' public adjuster, Rifkin & Rosen ("Rifkin"), and was received by Rifkin on July 15, 2013. (*Id.*, Ex. K.)

On October 11, 2016, Rifkin contacted Scottsdale and requested that it consider additional payments based on a Datacom Services Inc. ("Datacom") estimate dated January 14, 2013. (ECF No. 24-5, Ex. M.) On October 20, 2016, Scottsdale informed Rifkin that it would not consider any additional payments and it was committed to the position articulated in the July 11, 2013 denial letter. (ECF No. 24-5, Ex. N.)

### B. Procedural History

On June 29, 2017, G. Matts filed a Complaint (the "Complaint") against Scottsdale in the Superior Court of New Jersey, Monmouth County, Law Division against Scottsdale as well as "John Does 1-100" asserting causes of action for breach of contract seeking consequential damages due to an alleged failure to pay a covered loss pursuant to an insurance policy. (ECF No. 1-1, Ex. A.) On September 6, 2017, Scottsdale removed the action to this Court on the grounds of diversity

3

jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1.)

On September 27, 2017, Scottsdale filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5.) On December 11, 2017, this Court held oral argument on Scottsdale's Motion to Dismiss. (ECF No. 13.) On December 15, 2017, this Court issued an Opinion and Order denying Scottsdale's Motion to Dismiss the Complaint. (ECF Nos. 14 & 15.)

On February 28, 2018, G. Matts filed an Amended Complaint (the "Amended Complaint") against Scottsdale and "John Does 1-100" asserting the same causes of action. (ECF No. 18.) On February 15, 2019, Scottsdale filed a Motion for Summary Judgment, seeking judgment against G. Matts. (ECF No. 24.) On April 1, 2019, G. Matts filed an Opposition to Scottsdale's Motion for Summary Judgment and on April 10, 2019, Scottsdale filed a Reply Brief to G. Matts' Opposition to its Motion for Summary Judgment (ECF No. 29).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead,

the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the

matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

Scottsdale argues it is entitled to summary judgment as the action is untimely and barred by the Policy's suit limitation provision. (ECF No. 24-1 at 6-12.) Specifically, Scottsdale contends the Policy's statute of limitations bars recovery because G. Matts failed to filed the Complaint within the two-year limitation period, and Scottsdale's July 11, 2013 correspondence was a clear and unequivocal determination of coverage such that the two-year suit limitations provision began to accrue. (*Id.*) G. Matts argues the July 11, 2013 coverage determination letter was ambiguous as to its denial of coverage, and Scottsdale's first actual, definitive disclaimer of coverage came via a reply dated February 22, 2017, thereby tolling the contractual time bar until that time. (ECF No. 27 at 3-12.)

Pursuant to New Jersey law, any contractual statute of limitation provision contained in an insurance policy is tolled "from the time an insured gives notice until liability is formally declined." *Peloso v. Hartford Fire Ins. Co.*, 267 A.2d 498, 501 (N.J. 1970). As such, the

> literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company

> while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will only have [the contractually set time period] to institute suit.

*Id.* at 501-02.

The decision in *Peloso* remains the seminal holding precluding lawsuits when the policyholder does not comply with the policy's suit limitations provisions. *See Ryan v. Liberty Mut. Fire Ins. Co.*, 234 F. Supp. 3d 612, 616 (D.N.J. 2017) (holding that, in "an insurance dispute, the statute of limitations begins to run on the date of the casualty, but is tolled from the time the insured gives notice until the time the insurer formally declines coverage"); *see also Matos v. Farmers Mut. Fire Ins. Co. of Salem Cty.*, 943 A.2d 917, 920 (N.J. App. Div. 2008).

Here, it is undisputed that G. Matts seeks recovery for property damage it sustained in Superstorm Sandy on October 29, 2012. (ECF No. 24-4, Ex. I.) G. Matts provided notice of this loss to Scottsdale on November 15, 2012. (ECF No. 24-4, Ex. K.) Thereafter, Scottsdale undertook an eight-month long investigation of G. Matts' claim before making its coverage determination through its July 11, 2013 letter, indicating that it would disburse $6,975.97 on G. Matts' claim. (ECF No. 24-4, Ex. J.) Accordingly, pursuant to the two-year statute of limitation imposed by the Policy, G. Matts had until July 11, 2015 to file this lawsuit.[1] G. Matts did not file the Complaint until June 29, 2017, nearly two years after the statute of limitations expired. (ECF No. 1-1.) Therefore, G. Matts' Complaint is barred by the statute of limitations in the Policy.

G. Matts' argument that the July 11, 2013 coverage determination letter is ambiguous, and

---

[1] Scottsdale contends G. Matts' deadline should be determined to have been June 24, 2015, subtracting the seventeen days it took them to file the claim following their loss. (ECF No. 24-1 at 12.) This point is immaterial as it is undisputed that the Complaint was not filed until June 29, 2017, well after any calculated deadline.

therefore an improper disclaimer of coverage for the purposes of the contractual statute of limitations, is unpersuasive. The July 11, 2013 letter meticulously explained which claimed property damages were and were not covered and the grounds for each decision. (ECF No. 24-4, Ex. J.) Moreover, the July 11, 2013 letter also explicitly notified G. Matts that "there is no coverage for the other interior water damage" as the Policy "excludes any water damage due to continued or repeated seepage." (*Id.* at 7.) The July 11, 2013 letter further provided an explanation of the calculation of the payment amount. (*Id.* at 7-8.) As such, this Court determines that the July 11, 2013 coverage determination letter was an unequivocal denial of coverage sufficient to begin G. Matts' allotted time to bring suit pursuant to the contractual statute of limitations.

Moreover, G. Matts' position is undermined by the testimony of its co-owner, Guarang Jariwala ("Jariwala"), who conceded that it was "clear" that the July 11, 2013 letter was a denial of coverage. Jariwala testified, in pertinent part:

> Q: As you read [the July 11, 2013 coverage determination letter] today, do you understand that as a determination of what is going to be covered and what is not going to be covered under [the Policy]?
>
> A: Right. It kind of defines what they cover but what exactly was the cause of the interior damage, that's where there's disagreement.
>
> Q: Right. So you disagree with their decision, I understand that, but I'm saying does this, to you, give you an accurate picture of Scottsdale's decision as to what they're going to cover and what they're not going to cover?
>
> A: Reading it now, yeah, they're making it - - they're writing it as if they're being clear on what they will cover.
>
> Q: And what they will not cover as well?
>
> A: Right.

(ECF No. 24-4, Ex. L at 54:11-55:2.)

Finally, the Policy also includes a section whereby Scottsdale reserves the right to "review

any additional claims or amendments to [claims] and to make a separate determination as to whether a new claim or amendment to [the original] claim is [covered] by the policy." (ECF No. 24-4, Ex. J at 7.) This reservation of rights section further provides that if G. Matts believes "there is additional information that should be considered or some other reasons the policy should provide coverage," it must state so in writing within thirty days of receipt of the letter. (*Id.* at 8.)

Citing *Azze v. Hanover Ins. Co.*, 765 A.2d 1093, 1100-01 (N.J. App. Div. 2001), G. Matts contends that an insurance policy containing a reservation of rights section with language that if the insured had "any additional information regarding [the] claim," then the letter alone does not constitute an unequivocal denial but rather a "preliminary finding that remains open to revision." (ECF No. 27 at 11-12.) G. Matts argues this "open invitation to provide 'additional information' clearly makes the earlier 'denial letter' both confusing and ambiguous." (*Id.* at 12.)

G. Matts' argument is unpersuasive. In *Snell v. W. Am Ins. Co.*, No. 14-3985, 2017 WL 2225568, at *5 (D.N.J. May 22, 2017), the District of New Jersey held that reservation of rights language stating allowing the insured to provide "additional information that you believe will have a material effect on [the] determination of coverage" does not serve to vitiate the letter's status as a denial of coverage. On the contrary, the court held that "[t]his language, without additional circumstances, is insufficient to establish that *Azze* should apply." *Id.* The "additional circumstances" considered by the *Azze* court are clearly not present here. In *Azze*, the insured was negotiating two separate claims with its insurance company, and the court determined that "because both claims stemmed from the same homeowner's policy" and were both "ongoing well after the [] denial letter," a reasonable insured "might well believe that the limitations period would

9

not restart until [both claims were] settled." *Azze*, 765 A.2d at 1101.[2] As no such circumstances exist in this instance, and this Court has determined the July 11, 2013 letter was clear and unequivocal in denying coverage, G. Matts is precluded from bringing this suit by the applicable contractual statute of limitations. Accordingly, Scottsdale's Motion for Summary Judgment is **GRANTED**.

IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 24) is **GRANTED**.

**Date: September 30, 2019**                    */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**

---

[2] G. Matts cites several other cases in opposition to Scottsdale's Motion for Summary Judgment, however, no such cases provide persuasive support to its position for the same reason that the holding in *Azze* is inapplicable to this matter. As such, this Court did not provide an analysis of these additional cases.